46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tonetta CAVE, Defendant-Appellant.
 No. 94-1953.
 United States Court of Appeals, Seventh Circuit.
 Argued: Nov. 16, 1994.
Decided: Dec. 21, 1994.
 
 Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Tonetta Cave was convicted by a jury of distributing .4 grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. Sec. 841(a)(1) and sentenced to seventy months incarceration to be followed by five years of supervised release. Cave appeals her conviction and sentence on two grounds. According to Cave, the district court erred first at trial by allowing two witnesses to testify about prior drug purchases from Cave and again during sentencing by including the uncharged quantity of drugs sold to one of the trial witnesses as "relevant conduct" in calculating Cave's base offense level. We affirm the judgment of the district court.
 
 I. Background
 
 2
 At trial, a confidential source, Jeffrey Washington, testified that during the evening of June 1, 1992 he purchased .4 grams of crack cocaine from Cave at the home of one of Cave's relatives on 724 South 13th Street, Springfield, Illinois. Washington testified that someone serving as a doorman allowed him to enter the residence and that once inside the home he purchased crack cocaine from Cave. According to Washington, Cave placed crack cocaine in rock-like form on a table and told Washington to lay his money on the table. After Washington picked up the cocaine, Cave picked up the money, counted it, and put it in her purse. This transaction was recorded on audio tape.
 
 
 3
 At trial, the audio tape of the June 1, 1992 drug sale was played and a transcript purporting to identify the speakers, in particular Cave as the person selling the crack cocaine, was published to the jury. Washington testified that Cave was properly identified in the transcript as the woman who sold him the crack cocaine. Washington also testified about prior drug purchases beginning in 1990 when he made several purchases of marijuana from Cave at a house on Wirt Street and several purchases of crack cocaine from Cave at a house on Manor Court. Both houses were in Springfield, Illinois.
 
 
 4
 At trial, Constance Mathews, a government informant, testified that during 1991 and 1992 she purchased a total of seven grams of crack cocaine from Cave. These purchases were made in Springfield, Illinois during seven visits to the home of one of Cave's relatives at 600 South 12th Street and between ten and fifteen visits to the house at 724 South 13th Street. Mathews testified that the sales occurred in the evening through hand-to-hand purchases. A doorman would be at the door of the residence to determine whether or not a visitor could enter and the crack cocaine would be sold in rock-like form and often wrapped in cellophane. Mathews identified Cave's voice on the audio tape and testified that Cave was properly identified in the transcript as the woman selling the crack cocaine.
 
 
 5
 At trial Cave objected to the use of Washington's testimony about drug purchases prior to June 1, 1992 and all of Mathews' testimony. She claimed that the testimony was in violation of Federal Rules of Evidence 403 and 404(b) because it was unduly prejudicial and constituted evidence of other crimes or misconduct being used to establish a propensity to commit such acts. The district court allowed the introduction of the testimony in order to establish Cave's identity, presence, plan, and opportunity to distribute crack cocaine. The court gave a limiting instruction to the jury after Mathews' direct testimony. The court gave a similar instruction as part of its final instructions directing the jury that: "You have heard evidence of acts of the defendant other than those charged in the indictment. You may consider this evidence only on the questions of identity, presence, plan, or opportunity. This evidence is to be considered by you only for this limited purpose."
 
 
 6
 The jury found Tonetta Cave guilty of knowingly distributing .4 grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. Sec. 841(a). At a sentencing hearing Mathews again testified about her purchase of 7 grams of crack cocaine from Cave. The probation office in its presentence report included the 7 grams of crack cocaine that Mathews testified about as relevant conduct in calculating Cave's base offense level pursuant to U.S.S.G. Sec. 1B1.3(a)(2). Cave objected to this inclusion. The district court held that Mathews' testimony was credible and calculated Cave's base offense level upon distribution of 7.4 grams of cocaine-based substance. The district court sentenced Cave to seventy months incarceration followed by five years of supervised release. Cave now appeals the district court's admission of the testimony about uncharged misconduct at trial and the calculation of Cave's base offense level at sentencing.
 
 II. Federal Rule Of Evidence 404(b)
 
 7
 The decision whether or not to admit particular pieces of evidence is within the broad discretion of the trial court. United States v. McAnderson, 914 F.2d 934, 945 (7th Cir. 1990). This court will overturn the district court's decision to admit disputed evidence only for an abuse of discretion. United States v. Evans, 27 F.3d 1219, 1232 (7th Cir. 1994). There was no abuse of discretion by the district court in allowing either Washington or Mathews to testify about uncharged drug purchases from Cave.
 
 
 8
 Federal Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity ..." Fed. R. Evid. 404(b). If evidence falls within one of these areas of proof it must still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. This court looks at four factors in determining the admissibility of evidence in relation to Rules 404(b) and 403. These factors are whether:
 
 
 9
 (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.
 
 
 10
 United States v. Wilson, 31 F.3d 510, 514-15 (7th Cir. 1994) (citations omitted); United States v. Hubbard, 22 F.3d 1410, 1418 (7th Cir. 1994).
 
 
 11
 At trial, Cave employed a defense of misidentification and argued that she was not present at the June 1, 1992 drug transaction at 724 South 13th Street. The prior drug purchases by Washington and Mathews from Cave gave them the ability to identify Cave's voice on the audio tape and as such their testimony about these purchases was admissible. See Wilson, 31 F.3d. at 515 (involving introduction of evidence as to prior uncharged drug sales with government informant, the same Jeffrey Washington, for the purposes of identification). Mathews' testimony about other transactions with Cave involving a similar method of sale of crack cocaine[1] during roughly the same time period was admissible to establish Cave's identity, presence, plan, and opportunity. See United States v Kreiser, 15 F.3d 635, 640 (7th Cir. 1994) (evidence of defendant's involvement in drug transactions involving similar manner of distribution yet occurring seven years prior to the charged distribution admissible for the limited purposes of showing knowledge, intent, and motive); United States v. Zapata, 871 F.2d 616, 620 (7th Cir. 1989) (testimony regarding uncharged drug transactions admissible proof to establish identity, plan, and preparation when prior transaction involved was similar modus operandi, was temporally close, and refuted defendant's theory that he had never participated in any drug transactions).
 
 
 12
 In addition, the court gave the jury a limiting instruction at trial to consider evidence of uncharged drug sales only on the questions of identity, plan, presence, or opportunity after Mathews' direct examination and again as part of its final instructions. These instructions limited any prejudicial effect that either Washington's or Mathews' testimony may have had. See Hubbard, 22 F.2d at 1418 (any prejudicial effect of evidence that defendant had previously sold drugs to government informant was reduced by the court's limiting instruction that the jury was to consider the evidence only on the question of defendant's intent); United States v. Parkin, 917 F.2d 313, 316 (7th Cir. 1990) (noting mitigating effect of judge's limiting instructions during trial that evidence of uncharged drug transactions with defendant was introduced only for the purpose of showing intent, knowledge, or predisposition).
 
 III. Sentencing Decision
 
 13
 A district court's calculation of the quantity of drugs involved in an offense under the Federal Sentencing Guidelines is considered a finding of fact which will be reviewed under a clearly erroneous standard. United States v. Beler, 20 F.3d 1428, 1431 (7th Cir. 1994); United States v. Montgomery, 14 F.3d 1189, 1196 (7th Cir. 1994). The district court's drug quantity finding must be affirmed unless "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." United States v. McMillen, 8 F.3d 1246, 1250 (7th Cir. 1993), cert. denied sub nom., Raji v. United States, 114 S.Ct. 1649 (1994) (citations ommitted). The government bears the burden of establishing the quantity of drugs only by a preponderance of the evidence. Beler, 20 F.3d at 1431.
 
 
 14
 Under the Guidelines, in order to calculate a defendant's base offense level the sentencing court must consider quantities of drugs not specified in the counts of the conviction but that were "part of the same course of conduct or common scheme or plan" as the convicted offenses. U.S.S.G. Secs. 1B1.3(a)(2), 3D1.2(d). Conduct is considered part of a single course of conduct or common scheme or plan if the conduct shares "similarity, regularity and temporal proximity to the incidents in question." Beler, 20 F.3d at 1437. See also Montgomery, 14 F.3d at 1198; United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir. 1993). Under the Guidelines, a court may "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3(a).
 
 
 15
 The district court's finding that the sales of crack cocaine to Mathews were part of a single course of conduct based on the shared similarity, regularity, and temporal proximity between the charged conduct and the relevant conduct was not clearly erroneous.[2] See Montgomery, 14 F.3d at 1198 (defendant's sales to different buyers considered relevant conduct where "evidence establishes repeated sales of the same quantity of the same substance at approximately the same location through similar means"). First, the source and locations of the crack cocaine distribution were the same. Cave sold crack cocaine to both Washington and Mathews at a relative's residence on 724 South 13th Street and to Mathews at a relative's residence on 600 South 12th Street. Second, the sales were carried out in a similar manner. Cave sold Washington a 0.4 gram "rock" of crack cocaine and sold Mathews "rocks" of crack cocaine ranging from one quarter gram to one-half gram and typically weighing three-eighths gram. Each distribution was in the evening and involved a hand-to-hand exchange of cash for crack cocaine. Finally, the incidents shared temporal proximity. Cave was convicted of distributing crack cocaine on June 1, 1992 and Mathews began purchasing crack cocaine from Cave in 1991 and stopped purchasing from her in June 1992.
 
 
 16
 Cave argues that the district court should have found that Mathews' testimony was unreliable and unsubstantiated. In her affidavit Mathews stated with certainty that she purchased 7 grams of crack cocaine from Cave, but in her testimony she stated that she did not know exactly when the purchases were made, how many purchases were actually made, or the exact quantity of each purchase. In addition, at the sentencing hearing Mathews contradicted her trial testimony. At trial she stated that during 1991 up to June 1992 she had a $300-$400 per day cocaine habit, while at sentencing she stated that during that time period she had a $200 per day or week habit.[3] Cave argues that the court had an obligation to give special scrutiny to the testimony of someone who not only was a government informant but an admitted drug user who could estimate the exact amount of drugs purchased over a two-year period but could not recount the total number of purchases or accurately estimate her own drug use.[4]
 
 
 17
 Cave's arguments as to the reliability of Mathews' testimony are misplaced. "Credibility judgments of witnesses are left to the sound discretion of the district court, which has the advantage of having observed the demeanor of the witnesses as they testified." United States v. Campbell, 985 F.2d 341, 347 (7th Cir. 1993). All of Cave's challenges to Mathews' credibility - that she was a drug user, that she was obliged to testify due to her cooperation agreement with the government, and that minor discrepancies existed in her testimony - are just that, credibility questions. The district court, having observed Mathews testify and respond to cross-examination at both hearings, found Mathews to be a credible witness. This finding is not clearly erroneous. See United States v. Mumford, 25 F.3d 461, 467 (7th Cir. 1994) ("the sentencing court's factual finding can be supported by the testimony of a single witness who is arguably biased against the defendant"); United States v. Caicedo, 937 F.2d 1227, 1236 (7th Cir. 1991) (whether to credit the testimony of a witness who was a drug user and had entered into an agreement with the government requiring his testimony was within the district court's prerogative).
 
 
 18
 In addition, under the Guidelines the district court may estimate the total quantity of drugs involved in an operation by considering, among other things, the average price or amount of drugs sold in similar transactions when the drugs actually purchased from the defendant do not necessarily reflect the scope of her illegal operation. See U.S.S.G. Sec. 2D1.1, application note 12 (1993); Beler, 20 F.3d. at 1433. At the sentencing hearing, the district court made such an estimate and explained its calculations as follows:
 
 
 19
 I think that if we calculated up the various amounts on the average number of times, seven times, Theresa [Mathews] says ten to fifteen over on South Fourteenth [sic Thirteenth], et cetera, and if we averaged those out, the amount that she is being charged with here as being attributable to her is a conservative one. And I don't think that it is, being the evidence, it is being stretched in the slightest.
 
 
 20
 (Sentencing Transcript 4/25/94 at 41).[5] The district court's decision that the sales of drugs involving Mathews totaled 7 grams of crack cocaine was supported by a preponderance of the evidence was not unreasonable. See McMillen, 8 F.3d at 1250-1251; United States v. Welch, 945 F.2d 1378, 1384 (7th Cir. 1991), cert. denied, 112 S. Ct. 1235 (1992) (base offense level calculated upon informant's testimony that he had sold one to two ounces of cocaine a month for approximately eight months on behalf of the defendant).
 
 IV. Conclusion
 
 21
 We affirm the district court's disposition in its entirety. The district court did not err by admitting Washington's and Mathews' testimony about prior drug purchases from Cave as the basis of their identification of Cave's voice on the audio tape of the June 1, 1992 sale of crack cocaine and as proof of presence, plan, and opportunity to distribute crack cocaine. Nor did the district court err by considering Mathews' prior drug purchases from Cave relevant conduct and calculating Cave's base offense level to include the amount of crack cocaine previously sold to Mathews.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The similarity between the June 1, 1992 sale of crack cocaine to Washington and the sales of crack cocaine to Mathews is detailed on page 5
 
 
 [2]
 When uncharged conduct is considered under the relevant conduct rule, the "district court should explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its findings that the unconvicted activities bore the necessary relation to the convicted offense." United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir. 1991), cert. denied, 113 S. Ct. 174 (1992). The district court made the necessary findings of fact both at the sentencing hearing and in its written order
 
 
 [3]
 Cave points to minor discrepancies between Mathews' testimony at the sentencing hearing as opposed to the trial. At oral argument, the government claimed these discrepancies were the product of the differences in focus between the two hearings. At trial the focus was on establishing Cave's identity as a crack cocaine seller, whereas at the sentencing hearing the focus was on establishing the amounts of crack cocaine that Cave actually sold. Regardless of whether we find this explanation persuasive, which we do, the district court heard Mathews' testimony in both settings and made its credibility evaluation accordingly and without clear error
 
 
 [4]
 Cave also attacks Mathews' credibility by noting that Mathews did not notify the police about her prior drug dealings with Cave until approximately three weeks before Cave's trial even though Mathews had entered into a cooperation agreement with the police more than one year before that. Mathews' tardiness in notifying the police of her drug purchases from Cave, however, is explained, in part, by Cave notifying the government only shortly before trial that she would employ a misidentification defense. In order to refute Cave's defense, the government interviewed a number of individuals, including Mathews, about their familiarity with Cave and her voice and at that point Mathews' prior transactions with Cave came to light
 
 
 [5]
 Based upon Mathews' testimony of seven purchases at 600 South 12th Street and ten to fifteen purchases at 724 South 13th Street, with an average purchase amount of three eighths of a gram, a maximum of 8.36 grams and minimum of 6.46 grams of crack cocaine could have been included in the calculation of the quantity of drugs involved in the offense