46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Lloyd E. KEATING, Defendant/Appellant.
 No. 94-1899.
 United States Court of Appeals, Seventh Circuit.
 Argued: Nov. 15, 1994.
Decided: Jan. 26, 1995.
 
 Before COFFEY, RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Lloyd E. Keating pleaded guilty to conspiracy to distribute marijuana, in violation of 21 U.S.C. Sec. 846. The district court adopted the Presentence Investigation Report's calculation of the drug quantity attributable to Keating and sentenced Keating to 96 months of imprisonment; a 20% reduction from the applicable mandatory minimum sentence. Keating appeals his sentence, disputing the quantity of marijuana attributable to him. We affirm.
 
 I. Background
 
 2
 In January 1992, Lloyd E. Keating purchased marijuana in New Mexico. This marijuana was transported to Illinois and resold. In June 1992, Keating began doing business with Daniel Flores. Flores purchased marijuana in New Mexico and helped arrange its delivery to Illinois. In January 1993, Springfield police arrested Flores on one such delivery and found him in possession of 20 pounds of marijuana. Flores cooperated with the government and, Keating was arrested when he received marijuana from Flores. Keating also cooperated and pled guilty to conspiracy to distribute marijuana. Keating's plea agreement provided that the quantity of marijuana attributable to him would be determined at the time of sentencing.
 
 
 3
 At the sentencing hearing, DEA Agent Kelly Cain testified as to the drug quantity attributable to Keating. Agent Cain had previously conducted two interviews with Daniel Flores, the supplier in New Mexico. In the second interview, summarized in a DEA report, Flores had recounted his specific marijuana transactions with Keating.
 
 
 4
 The Presentence Investigation Report (PSR) relied on those DEA reports and a subsequent affidavit supplied by Agent Cain to calculate a marijuana quantity of 324 pounds. At the sentencing hearing, Agent Cain himself testified that his calculations, based on his second interview with Flores, yielded a figure of 245.5 pounds. Agent Cain further testified that this 245.5 pound figure was a conservative estimate, that the figure was corroborated by a confidential third party source, and that the figure did not include any of Keating's marijuana transactions prior to June 1992, for which Keating had received governmental immunity.
 
 
 5
 Agent Cain testified that Flores initially claimed to have distributed four to five thousand pounds of marijuana, which had turned out to be an embellishment. However, Agent Cain characterized the second interview, conducted after Flores agreed to cooperate with the government, as a more accurate description of the quantity distributed. Keating failed to offer any contradictory evidence, but instead claimed that the interview with Flores was unreliable because Flores had a motive to exaggerate the extent of the drug dealing. The district court rejected Keating's objection to the reliability of Flores's information and adopted the recommendations of the PSR, and held Keating accountable for 324 pounds.
 
 
 6
 Because Keating was accountable for over 100 kg (220 pounds) of marijuana and had a prior drug felony, the ten year mandatory minimum sentence under 21 U.S.C. Sec. 841(b)(1)(B) applied. Because of Keating's ongoing cooperation with the government, the government moved for a downward departure from the ten year minimum. The district court granted the motion and sentenced Keating to 96 months of imprisonment, a 20% reduction from the mandatory minimum sentence. Keating appeals the calculation of the quantity of marijuana attributable to him. Keating argues that because Flores was unreliable and not cross-examined at the hearing, the government did not adequately prove the drug quantity.
 
 II. Analysis
 
 7
 A district court's calculation of the drug quantity is a finding of fact that must be supported by a preponderance of the evidence. United States v. Huels, 31 F.3d 476, 481 (7th Cir. 1994) (citing United States v. Beler, 20 F.3d 1428, 1431 (7th Cir. 1994)). The standard of review for factual findings is that the court's determination will be reversed only if clearly erroneous. United States v. Phillips, Nos. 93-2170 & 93-3352, slip op. at 3 (7th Cir. Oct. 6, 1994). The reviewing court must affirm unless on the entire body of evidence there exists a definite and firm conviction that a mistake has been committed. Beler, 20 F.3d at 1431 (quoting United States v. McMillen, 8 F.3d 1246, 1250 (7th Cir. 1993)).
 
 
 8
 Keating contends that the district court erred because the preponderance of the evidence does not support the court's finding that Keating was responsible for 324 pounds of marijuana. A defendant is entitled to be sentenced on the basis of accurate information. Mumford, 25 F.3d at 467 (citing United States v. Atkinson, 15 F.3d 715, 720 (7th Cir. 1994)). The Sentencing Guidelines authorize a court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3(a), p.s. However, "[a] defendant who challenges factual allegations in the PSR ... has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." United States v. Rivera, 6 F.3d 431, 444 (7th Cir. 1993) (quoting United States v. Isirov, 986 F.2d 183, 185 (7th Cir. 1993)). "The only time when a defendant can possibly succeed with a mere denial is in the case of a naked or unsupported charge." Rivera, 6 F.3d at 445 (quoting United States v. Westbrook, 986 F.2d 180, 183 (7th Cir. 1993)). "Unreliable allegations must not be considered." Beler, 20 F.3d at 1433 (citations omitted). Hence, a defendant must present reliable contradictory evidence of the drug quantity or demonstrate the unreliability of the government's calculations as to quantity.
 
 
 9
 At Keating's sentencing hearing, the defendant failed to produce any contradictory evidence that would serve to demonstrate that he was responsible for a lesser amount than the PSR attributed to him. Keating did not challenge any specific portions of the Flores interview report, instead he merely argued that the government's evidence was unreliable.
 
 
 10
 Specifically, Keating contends that Flores's statements to DEA Agent Cain are unreliable. This claim is supported by Agent Cain's testimony that Flores, upon arrest, embellished the extent of his drug trade. Agent Cain, however, testified that a second interview, conducted after Flores agreed to cooperate with the government, revealed an accurate description of the drug transactions. It is this second interview that forms the basis for both Agent Cain's and the PSR's calculations of the drug quantity involved. Keating argues that Flores continued to exaggerate and had an incentive to do so. Presumably, this incentive is that Flores can get a greater sentence reduction for his crimes the more seriously he can implicate others. However, there is no indication that this assumption has any basis in the record.
 
 
 11
 Moreover, the testimony of an accomplice is not considered inherently unreliable. See United States v. Lindsey, 30 F.3d 68, 70 (7th Cir. 1994). Keating relies on Beler, 20 F.3d at 1433-34, to argue that the district court erred. However, the circumstances presented in Beler are distinguishable from those of Keating's case. In Beler, the government's evidence consisted of two affidavits and the trial testimony of a co-conspirator. The affidavits contained unexplained estimates, had serious typographical errors, and contradicted each other as to the drug quantity and length of the conspiracy. Also, at trial, the co-conspirator was unable to approximate the quantity of drugs involved. This court found in Beler that although the defendant had not given any evidence as to the drug quantity, he had sufficiently shown the unreliability of the government's evidence. This court explained that the district court had erred in taking the affidavits at face value and remanded to the district court for a hearing to scrutinize the reliability of its drug quantity estimates.
 
 
 12
 In Keating's case, Keating has not shown that the government's evidence was sufficiently unreliable. Although Flores did exaggerate his drug trade when first arrested, he subsequently provided a detailed seventeen page chronology of six months of drug transactions with Keating. The pattern of these transactions was also corroborated by another reliable informant. The district court, moreover, held an evidentiary hearing where the agent who worked on the case and who interviewed Flores testified that the quantities were accurate, that the transactions were corroborated, and that the overall estimate was conservative. "It is well established that with respect to sentencing issues, 'credibility judgments of witnesses are left to the sound discretion of the district court."' United States v. Dillard, Nos. 93-1946 & 93-2419, slip op. at 15 (7th Cir. Dec. 20, 1994) (quoting United States v. Campbell, 985 F.2d 341, 347 (7th Cir. 1993)). The trial judge "has the best 'opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." United States v. Tolson, 988 F.2d 1494, 1497 (7th Cir. 1993) (quoting Churchill v. Waters, 977 F.2d 1114, 1124 (7th Cir. 1992), vacated on other grounds by 114 S. Ct. 1878 (1994)). Agent Cain further testified that the drug quantity could have been up to "four or five hundred pounds." Hence, because the flaws evident in Beler are lacking in Keating's case, Keating has failed to demonstrate sufficient unreliability that would lead to a finding of clear error by the district court.
 
 
 13
 Finally, Keating argues that he should have been given an opportunity to cross-examine Flores. However, "[a] convicted defendant does not possess a constitutional right to cross-examine a person who provided the government with information that was later used during sentencing." United States v. Badger, 983 F.2d 1443, 1459 (7th Cir. 1993) (citation omitted). In sentencing, hearsay testimony is allowed. United States v. Wagner, 996 F.2d 906, 916 (7th Cir. 1993) (citing United States v. Agyemang, 876 F.2d 1264, 1272 (7th Cir. 1989)). Still, the defendant must be given some opportunity to challenge contested hearsay. United States v. Barnes, 907 F.2d 693, 695-96 (7th Cir. 1990). The judge should "give the defendant the opportunity to show why the hearsay information is wrong and to present his side of the story." Agyemang, 876 F.2d at 1272. In this case, Keating cross-examined Agent Cain, the DEA agent who conducted the interview with Flores. Keating also had the opportunity to present any rebuttal evidence at the hearing, but chose not to. The district court judge evaluated the testimony and was satisfied that the calculations were "credible and accurate." (Sentencing Tr. at 53). Keating, hence, had adequate opportunity to challenge the interview report of Flores.
 
 III. Conclusion
 
 14
 The government's calculation of the quantity of marijuana attributable to Keating was supported by a preponderance of the evidence. The district court held a hearing, evaluated the evidence, and concluded that the government's position was accurate and credible. The district court did not clearly err because Keating has neither provided contradictory evidence, nor shown that the government's calculations lacked the indicia of reliability.
 
 
 15
 AFFIRMED.