**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Salvi PORRETTA, Defendant–Appellant.**

No. 96–2908.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1997.

Decided June 23, 1997.

Helene B. Greenwald (argued), Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for plaintiff–appellee.

Anthony M. Montemurro (argued), Mark M. Bradford, Chicago, IL, for defendant–appellant.

Before POSNER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Salvi Porretta pleaded guilty to a charge of conspiring to commit crimes against the United States in violation of 18 U.S.C. § 371. Specifically, Porretta stole envelopes containing credit cards and other access devices from the United States mail (18 U.S.C. § 1708), trafficked in those unauthorized devices with intent to defraud and in so doing obtained in excess of $1,000 (18 U.S.C. § 1029(a)(2)), and, with intent to defraud, possessed fifteen or more unauthorized devices (18 U.S.C. § 1029(a)(3)). Following a sentencing hearing, Porretta was sentenced to 51 months' imprisonment followed by three years of supervised release. He was also ordered to make restitution in the amount of $40,000. In arriving at this sentence, the district judge imposed a four-level enhancement for Porretta's aggravating role as an organizer or leader of criminal activity involving five or more participants, U.S.S.G. § 3B1.1(a), and a two-level enhancement because Porretta's offense involved more than minimal planning, U.S.S.G. § 2B1.1(b)(4)(A). On appeal, Porretta challenges the district court's determination that he was an organizer or leader of criminal activity involving five or more participants. He also argues that the district court's imposition of both the aggravating role enhancement and the planning enhancement constitutes impermissible double counting. We affirm.

## BACKGROUND

By virtue of his position as a fleet service clerk for American Airlines at O'Hare International Airport, Porretta had access to United States mail that was being routed from postal drops in Omaha, Nebraska to destinations in the eastern United States via O'Hare. That mail included credit cards and other access devices (e.g., ATM cards) that had been manufactured in Omaha and were being sent to cardholders. As they passed through O'Hare, Porretta stole the cards from the mail. The thefts began in approximately 1991 and continued into early 1995. During the course of this four-year period, Porretta stole in excess of 1,000 cards. The stolen cards were used without authorization and generated an aggregate loss in the vicinity of three million dollars. Porretta recruited other individuals to take the cards he had stolen, sell them and then share the proceeds with him. One such individual was Michael Stacey, who was also an airline employee at O'Hare, another was co-defendant Vince Randazzo.[1]

---

1. Stacey was charged separately by the government.

In a written plea agreement dated April 1, 1996, Porretta expressly admitted that he "conspired and agreed with co-defendant Vincent Randazzo, Michael Stacey, and other individuals to violate the laws of the United States by (1) stealing and taking letters out of [the] U.S. mail ...; (2) knowingly and with the intent to defraud trafficking in stolen credit cards ...; and (3) knowingly and with the intent to defraud possessing more than fifteen stolen credit cards." (Record # 78 at 3). Porretta also admitted that he "asked other individuals to traffic in the stolen credit cards and access devices ... [and that] these individuals, including Michael Stacey and Randazzo, agreed to traffic in stolen credit cards and access devices." *Id.* at 4. The plea agreement also provided that Porretta and the government were in accord that "Pursuant to Guideline Section 3B1.1(a), the offense level should be increased an additional four (4) levels because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *Id.* at 9. Porretta and the government also agreed that in the event that Guideline Section 2B1.1(b)(4)(B) (providing for a four-level enhancement if the offense involves receiving and selling stolen property) was found to be inapplicable, then the offense level should be increased two levels pursuant to Guideline Section 2B1.1(b)(4)(A) because Porretta's offense involved more than minimal planning. *Id.*

Following the entry of Porretta's plea agreement, the probation officer submitted a preliminary presentence investigation report ("PSI"), to which a copy of the government's version of the offense conduct was attached. In detailing the alleged facts surrounding Porretta's offense, the government recited the information set out above concerning Porretta, Michael Stacey and Vince Randazzo. The government also stated that in his plea agreement Vince Randazzo admitted to having been asked by Porretta to traffic in stolen credit cards, to sell the cards to other people, and to share the proceeds of the sales with him. Vince Randazzo admitted to receiving at least eighty-two credit cards from Porretta. Vince sold a number of the cards

(approximately twenty) to his sister, co-defendant Maria Barone Randazzo, and also sold approximately twenty-two to his wife, co-defendant Carol Randazzo, who used some cards herself and sold the others. The government further noted that in her plea agreement Carol Randazzo admitted that on one occasion she accepted between four and eight stolen credit cards directly from Porretta. Vince and Carol sold a number of the credit cards they received from Porretta to Carol's mother, co-defendant Maryann Czerlanis.

The preliminary PSI also included the probation officer's calculation of the applicable sentencing range. In relevant part, the probation officer found that more than minimal planning was involved in the offense (see U.S.S.G. § 2B1.1(b)(4)(A)), but since she also found that Porretta had received and sold stolen property (see U.S.S.G. § 2B1.1(b)(4)(B)) and was therefore deserving of a four-level enhancement, she did not recommend the two-level enhancement for more than minimal planning because these two enhancement provisions are to be applied in the alternative. The probation officer also recommended a four-level enhancement for Porretta's aggravating role in the offense pursuant to U.S.S.G. § 3B1.1(a),[2] noting that "[t]he defendant is the most culpable individual involved in the conspiracy. [He] stole the credit cards and sold them to Vince Randazzo and others. The offense also involved at least five participants." Porretta filed no objections to the preliminary PSI and on June 28, 1996, the PSI was submitted to the district court as the final PSI.

Prior to the sentencing hearing, Porretta filed three objections to the Sentencing Guidelines calculations in the PSI: (1) He objected to the amount of loss calculation; (2) he argued that he had not received stolen property and therefore the four-level enhancement under § 2B1.1(b)(4)(B) should not apply; and (3) he argued that his offense level should not be enhanced for his role in the offense. The first two of these objections were taken up at the sentencing hearing on July 9, 1996, wherein the district court over-

---

**2.** Section 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."

ruled Porretta's first objection (amount of loss) and sustained the second, finding § 2B1.1(b)(4)(B) inapplicable. However, as provided in the plea agreement, the court then increased the offense level by two levels for more than minimal planning pursuant to § 2B1.1(b)(4)(A). When asked if there was anything else, Porretta's counsel did not pursue his third written objection concerning the aggravating role enhancement. Thereafter, as already noted, the court imposed a sentence of 51 months' imprisonment followed by three years of supervised release, and directed Porretta to make restitution in the amount of $40,000.

One week later, Porretta filed a motion captioned "Motion for Correction of Sentence" in which he argued that imposition of both the planning enhancement and the aggravating role enhancement constituted impermissible double counting and that, in any event, the four-level aggravating role enhancement was inapplicable because Porretta did not have control over four other participants in the offense. The district court denied the motion, stating in relevant part: "Evidence supported that [Porretta] was an organizer/leader and it was not improper double counting to enhance for both that and more than minimal planning. *See United States v. Michalek*, 54 F.3d 325, 334 n. 14 (7th Cir.1995); *United States v. Harris*, 41 F.3d 1121 (7th Cir.1994)." (Record # 104). In this appeal, Porretta presses the same two sentencing objections.

## ANALYSIS

■ We begin by considering Porretta's contention that the district court erred in imposing a four-level enhancement for his role as an organizer/leader of criminal activity involving five or more participants, for if Porretta is correct on this score his second contention—namely, that it was improper to apply both the organizer/leader enhancement *and* the minimal planning enhancement— falls by the wayside. At the outset, we must determine the proper standard of review. Ordinarily, a district court's determination as to the defendant's role in the offense is reviewed for clear error. See *United States v. House*, 110 F.3d 1281, 1283 (7th Cir.1997); *United States v. Hogan*, 54 F.3d 336, 340 (7th Cir.1995). Here, however, the government contends that Porretta failed to preserve this issue properly in the district court proceedings and therefore we should review only for plain error.[3]

■ As noted above, shortly before the sentencing hearing, Porretta submitted objections to the presentence investigation report.[4] Porretta took exception to application of an enhancement for receiving stolen property and to the probation officer's finding that the amount of loss attributable to the scheme was over three million dollars. His third objection stated: "Salvi Porretta takes exception to the increase of 4 levels for his involvement in the offense. Salvi Porretta [s]tates further that he should not receive a 4 level increase for his involvement in this offense and as a matter of law this subsection should not be applied to him." After sustaining the first of these objections and denying the second, Judge Hart determined that a two-level enhancement under U.S.S.G. § 2B1.1(b)(4)(A) for more than minimal plan-

---

**3.** Citing *Koon v. United States*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392, Porretta argues that our review should be for abuse of discretion. The reliance on *Koon* is misplaced, however, because that case established the standard of review for a district court's discretionary departure from the Sentencing Guidelines, not the imposition of a mandatory sentencing enhancement. Cf. *United States v. Wyatt*, 102 F.3d 241, 246 n. 7 (7th Cir.1996) (noting that *Koon* did not control review of enhancement under U.S.S.G. § 2K2.1(b)(5) [possession of firearms in connection with another felony] and that due deference to the district court's factual determinations relevant to that guideline provision is given through

clear error review), certiorari denied, —— U.S. ——, 117 S.Ct. 1325, 137 L.Ed.2d 486.

**4.** Porretta's objections were apparently not filed with the district court, for the district court's docket does not reflect their filing nor does the copy of Porretta's objections that is appended to the government's brief on appeal bear any stamp evidencing that it was filed or docketed in the district court. Nevertheless, the government acknowledges that Porretta did submit the objections to the court and the sentencing transcript reveals that Judge Hart was aware that Porretta had objections to the presentence investigation report.

ning was warranted.[5] Judge Hart then asked Porretta's counsel whether there was "anything else," to which counsel responded, "No Judge. Since you ruled on that, no." After hearing from Porretta's co-defendants, Judge Hart imposed Porretta's sentence. At no time during the sentencing hearing did Porretta raise any objection to the aggravating role enhancement.

Approximately one week after the district court imposed his sentence, Porretta filed a motion, purportedly pursuant to Fed. R.Crim.P. 35(c), captioned "Motion for Correction of Sentence." In the motion, Porretta argued, for the first time, that his enhancement under U.S.S.G. § 3B1.1(a) was improper "because [he] did not have control over four of the participants in the offense." Porretta's motion was patently improper under Rule 35(c). That rule provides that, within seven days of imposition of sentence, a district court may correct a sentence that was imposed as a result of arithmetical, technical or other clear error; however, the advisory committee notes to Rule 35 caution that:

> The authority to correct a sentence under [subsection (c)] is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court [following appeal]. The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines. Furthermore, the Committee did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing.

Here Porretta's motion for correction of sentence merely sought to have the court consider an objection he raised in vague and general terms prior to the sentencing hearing and then completely abandoned at the hearing. The motion plainly does not ask the court to cure an obvious arithmetical, technical or other clear error, and flies in the face of the advisory committee's admonition that it "did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing." Thus we agree with the government that Porretta's belated attempt to assert his objection to the aggravating role enhancement was improper under Rule 35(c) and insufficient to properly preserve the issue for appeal. Accordingly, we review the district court's determination that Porretta was an organizer or leader of criminal activity involving five or more participants for plain error. "Plain error" is error that is "clear" and prejudicial. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). "Clear error" exists where the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We are left with no such conviction here.

■ In the first place, Porretta expressly agreed in his plea agreement that "Pursuant to Guideline Section 3B1.1(a), the offense level should be increased an additional four (4) levels because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." This may well be enough to defeat Porretta's contention on appeal, see *United States v. Nguyen,* 46 F.3d 781, 783 (8th Cir.1995) (defendant who agreed on applicable guideline provision in plea agreement could not challenge its application on appeal); *United States v. Fritsch,* 891 F.2d 667, 668 (8th Cir.1989) ("we believe that it would be unjust to allow Fritsch to agree to the application of the Sentencing Guidelines

---

**5.** Porretta's plea agreement specifically provided that "if the Court determines that the four (4) level enhancement [under § 2B1.1(b)(4)(B) for being in the business of receiving and selling stolen property] the parties agree that pursuant to Guideline Section 2B1.1(b)(4)(A), the offense level is increased an additional two (2) levels because defendant's offense involved more than minimal planning."

and reap the benefits of his plea and then assert that they are invalid"). Certainly the government is prejudiced by a defendant's conduct of agreeing to the appropriateness of an enhancement in a plea agreement, raising no objection to imposition of the enhancement prior to the sentencing hearing—thereby depriving the government of notice that there is a dispute concerning a factual predicate to the enhancement—and then raising an objection to the enhancement after the conclusion of the sentencing hearing and imposition of the sentence. Moreover, in this case there is an additional basis for rejecting Porretta's appeal. Porretta did more than just agree to the application of a particular guideline provision, he explicitly acknowledged that the factual predicate for application of the enhancement was satisfied. In the same vein, Porretta's first factual admission in his plea agreement states that he "conspired and agreed with co-defendant Vincent Randazzo, Michael Stacey, *and other individuals* to violate the laws of the United States ...." (emphasis added). The plain import of this admission is that in addition to Randazzo and Stacey there were at least two other persons with whom Porretta conspired. Porretta's position on appeal—that he did not have control over four other participants in the offense—effectively asks this Court to disregard his own admissions without providing any basis for so doing. (To the contrary, when asked at oral argument why Porretta admitted to these facts, Porretta's counsel—who was also his trial counsel—answered that he thought the government could prove the facts.) Absent any compelling basis for disregarding the admissions, they must stand. In light of Porretta's admissions, the district court committed no error, plain or otherwise, in finding that Porretta was deserving of the aggravating role enhancement.

■ Porretta's second contention—that the district court's application of both the aggravating role enhancement and the planning enhancement constituted impermissible double counting—need not detain us long. This argument not only flies in the face of a Sentencing Guideline application note that speaks directly to the issue but is also one that this Court has previously rejected. Application Note 4 to § 1B1.1 of the Sentencing Guidelines states as follows:

> Absent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively (added together). *For example, the adjustments from § 2F1.1(b)(2) (more than minimal planning) and § 3B1.1 (Aggravating Role) are applied cumulatively.* (emphasis added).

Giving effect to this direct instruction, this Court rejected the same argument now raised by Porretta in *United States v. Michalek*, 54 F.3d 325, 334 n. 14 (7th Cir.1995), where we held that application of a minimal planning enhancement and an aggravating role enhancement was not impermissible double counting. See also *United States v. Boula*, 932 F.2d 651, 654–655 (7th Cir.1991) (finding no impermissible double counting where district court applied a four-level enhancement because the defendant was a leader in an offense that was "otherwise extensive" and a two-level enhancement because the offense involved more than minimal planning). Virtually every circuit to have addressed the issue has reached the same conclusion, see *United States v. Harris*, 41 F.3d 1121, 1123 (7th Cir.1994) (collecting cases), namely, that there is no impermissible double counting because the two enhancements concern separate and independent sentencing considerations. As the Third Circuit explained in *United States v. Wong*, 3 F.3d 667 (3d Cir.1993):

> The Guidelines target more than minimal planning because it is "indicative of an intention and potential to do considerable harm," and "is often related to increased difficulties of detection and proof." U.S.S.G. § 2B1.1 Background Commentary.... On the other hand, the adjustment for role in the offense addresses concerns about the relative responsibilities of those involved in the commission of the offense, punishing those more harshly who assume a leadership role. See U.S.S.G. § 3B1.1 (Background commentary).

*Id.* at 672. To the extent that Porretta would have us revisit the issue, we decline to do so.

Porretta attempts to avoid this Court's authority by arguing that no prior case in

this Circuit has ever applied the minimal planning and aggravating role enhancements in such a fashion as to result in a total of six additional offense levels. Even if Porretta were correct—which he is not, see *Boula, supra*—his observation is without any legal significance whatsoever as cases from other circuits demonstrate. See, *e.g., United States v. Camper,* 66 F.3d 229, 232 (9th Cir. 1995) (finding no impermissible double counting where defendant received four-level aggravating role enhancement and two-level minimal planning enhancement); *United States v. Myerson,* 18 F.3d 153, 164 (2d Cir.1994) (same), certiorari denied, 513 U.S. 855, 115 S.Ct. 159, 130 L.Ed.2d 97; *United States v. Smith,* 13 F.3d 1421, 1429 (10th Cir.1994) (same), certiorari denied, 513 U.S. 878, 115 S.Ct. 209, 130 L.Ed.2d 138; *United States v. Willis,* 997 F.2d 407, 418–419 (8th Cir.1993) (same), certiorari denied, 510 U.S. 1050, 114 S.Ct. 704, 126 L.Ed.2d 670. Accordingly, there was no error in the district court's application of both a four-level enhancement for Porretta's role in the offense and a two-level enhancement because the offense involved more than minimal planning.

The judgment of the district court is affirmed.