In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-1297

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICKEY CLARK,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 1129—**Joan B. Gottschall**, *Judge.*

_____

ARGUED APRIL 15, 2008—DECIDED AUGUST 19, 2008

_____

Before CUDAHY, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge.* Rickey Clark entered a blind guilty plea with respect to one count of conspiring to possess cocaine with intent to distribute, *see* 21 U.S.C. § 846, and one count of possessing cocaine with intent to distribute, *see id.* § 841(a)(1). The district court determined by a preponderance of the evidence that Clark had possessed between 15 and 50 kilograms of cocaine. At the sentencing hearing, the government's attorney repeatedly stated, in

error, that Clark was not subject to a mandatory minimum sentence. The judge considered the 18 U.S.C. § 3553(a) sentencing factors and imposed a sentence of 48 months' imprisonment. The very next day, the government filed a motion to correct the sentence, *see* Fed. R. Crim. P. 35(a), based on the fact that the court was required to impose a mandatory minimum sentence of ten years due to the quantity of cocaine Clark possessed, *see* 21 U.S.C. § 841(b)(1)(A)(ii). The court agreed that the mandatory minimum applied, and it amended the judgment to correct the sentence. Because the district court acted within its power under Federal Rule of Criminal Procedure 35(a) when it corrected Clark's sentence to reflect the statutory mandatory minimum, we affirm Clark's sentence.

## I. HISTORY

Rickey Clark was charged in a multi-count indictment for his participation in a cocaine-distribution conspiracy. Without a written plea agreement from the government, Clark pled guilty to two of the charged counts: conspiring to possess cocaine with intent to distribute, *id.* § 846, and possessing cocaine with intent to distribute, *id.* § 841(a)(1). Clark did not admit that his offenses involved a particular quantity of cocaine, and he maintained throughout the proceedings that he possessed less than one kilogram. He also argued that the quantity of drugs at issue is an element of his 21 U.S.C. § 841 offense, and that the Fifth and Sixth Amendments precluded subjecting him to an enhanced sentence based on a drug quantity

that was not determined by a jury beyond a reasonable doubt. At the drug-quantity hearing, the district court pointed out that the Seventh Circuit has rejected similar constitutional arguments, and proceeded to decide the drug quantity by a preponderance-of-the-evidence standard.

The government called Juan Corral as a witness at the drug-quantity hearing. Corral was a cocaine dealer who had spent time in prison for drug-trafficking convictions. Clark was one of Corral's repeat, multiple-kilogram customers between the months of February and June, 2002. During that time period, Corral's sales of cocaine to Clark varied in quantity and frequency. Corral experienced some "droughts," during which Corral's suppliers could not provide him with cocaine. But, Corral explained, Clark was one of his "preferred" customers—whenever Corral came off of a drought, Clark was one of the first customers he would call.

Corral shared how he and Clark would arrange their meetings. They would talk over the phone and arrange a meeting place. They used code words to refer to kilograms of cocaine, including the terms "bench press," "reps," and "tickets." Corral recounted one particular conversation he had with Clark, on June 5, 2002, in which the two men referred to the kilograms of cocaine as "tickets." He said that Clark had asked for five tickets (kilograms), but that he was trying to get Clark to take six. Corral said he had no doubt in his recollection that on June 5, he and Clark talked about kilograms of cocaine.

In recalling his encounters with Clark, Corral stated that the smallest amount of cocaine he sold Clark on one

occasion was three kilograms; the largest amount was around eight kilograms. The amount of cocaine that Clark most frequently purchased from Corral was five to six kilograms. Corral stated that he was "100 percent sure" that when Clark bought cocaine from him, he bought three or more kilograms at a time. Corral recalled, "to the best of [his] knowledge," that he dealt with Clark about once a month. Based on those recollections, Corral estimated that he sold Clark "maybe 17 kilos" of cocaine during the five-month period. Corral thought that he dealt with Clark one time in February, and maybe twice in March. But he could not give estimates for April, May, or June. Corral did not remember the specific dates on which he sold cocaine to Clark. Corral explained how he arrived at the 17-kilogram estimate, which he felt was conservative: "I dealt with him from February 2002 to June 2002. And I [estimated] three keys a month, that would come out to 15. And I know for sure that he purchased at times more than three keys."

When considering the testimony, the district court explained that standing alone, Corral's memory of the sales to Clark was not "good enough to send somebody away for." The court then asked the government how many conversations between Corral and Clark they had recorded—"how many discussions about transactions is the Government actually able to prove with telephone calls?" The government then referred to the complaint affidavit, which detailed some of the wiretapped conversations. During one such conversation, on May 14, Corral and Clark discussed five kilograms of cocaine. Another set of wiretapped conversations dealt with the June 5 transaction to which Corral testified and addressed

five to six kilograms of cocaine. The district court determined that these two phone conversations corroborated Corral's testimony that his drug deals with Clark happened once a month.

The government, however, did not introduce into evidence the actual transcripts or tapes of the wiretapped phone calls. The court instead relied on summaries of the wiretapped conversations contained in a complaint affidavit that was attested to by a drug-trafficking agent in the government's efforts to show probable cause before a magistrate judge. Clark objected to the district court's reliance on the complaint and its affidavit, because "defendants are not included in terms of drafting the complaint, can't cross-examine the drafter of it, can't make any changes, can't make any suggestions. It's the Government's document which they submit."

The district court stated that the summarized wiretapped conversations were "irrefutable evidence that [Clark] was discussing relatively large deals, that's deals in the five-to-six kilogram range with Mr. Corral on two occasions." Those conversations proved to the judge that Corral was "telling the truth in terms of the kind of customer that Mr. Clark was." Even though the tapes were not in evidence, the district court "assum[ed] the Government ha[d] this evidence that it [was] describing in the complaint." The court explained that the government's summary of the taped conversations was, to some extent, corroborated by Corral. Additionally, the court explained, "This is an official court document. So I'm assuming, for purposes of this drug quantity hearing,

where the standard is a preponderance of the evidence, and I don't think rules of evidence strictly apply, that I can rely on the Government's assertion that this complaint is based on surveillance."

Clark also argued that the court should discredit Corral's testimony because Corral was an admitted perjurer who had a deal with the government that was contingent on him testifying to certain things. The district court did not agree, and found that Corral was "trying to be truthful and [ ] trying to be conservative," even though his precision was less than satisfactory. Thus, while Corral's testimony alone was not precise enough, in the district court's view, to justify a 15-kilogram drug-quantity finding, the combination of Corral's testimony with the summarized wiretaps convinced the court that Clark's offense involved more than 15 kilograms of cocaine.

Shortly after the drug-quantity hearing, Clark appeared for sentencing on January 17, 2007. The district court began the sentencing hearing with a question about mandatory minimums: "Is there a mandatory minimum that applies in this case?" The Assistant United States Attorney (AUSA) replied, "There is not, Judge, and the presentence investigation report is incorrect in regard to that." The AUSA explained that without the mandatory minimum, Clark's sentencing range was 108 to 135 months' imprisonment; his Criminal History Category was I and his offense level was 31. The court repeated its question: "Okay. With no mandatory minimum?" The AUSA replied, "Right."

Clark argued for a sentence below the guidelines range because of his personal characteristics, his steady employ-

ment background, and the fact that he had no prior criminal convictions. Clark also argued that he deserved a sentence below the guidelines range because of the weak evidence demonstrating drug quantity. In response, the government urged the district court to sentence Clark within the guidelines range: "the Government would just argue that a guideline range is appropriate here, particularly given that the mandatory minimum does not apply . . . ."

The district court viewed Clark's cocaine-selling activities as a "significant mistake," but stated that the "rest of his life has been pretty good." The court cited Clark's minor criminal history, his "huge job stability," and the fact that he is a family man, as factors indicating that he is a person who "appears to have a good life and a positive life." The court also took into consideration negative factors—such as Clark's gambling problems and his new conviction for a serious felony drug offense—when analyzing the sentencing factors under 18 U.S.C. § 3553. The judge decided on a sentence of 48 months, to reflect the "seriousness of the offense," while giving Clark "an opportunity to resume the positive aspects of his past life when he is released."

The very next day, the government submitted a motion to correct Clark's sentence, pursuant to Federal Rule of Criminal Procedure 35(a). The government acknowledged the mistake it made at sentencing in insisting that no mandatory minimum applied to Clark's offense. The government argued that the district court was required to impose the mandatory minimum prescribed by 21

U.S.C. § 841(b)(1)(A)(ii), because of the 15 kilograms attributed to Clark's offense by the court. The district court agreed that the court's drug-quantity finding subjected Clark to the statutory mandatory minimum. The district court explained that, while "the court was able to determine the drug quantity based on a preponderance of the evidence, [the court] does not believe that the evidence would have been sufficient to sustain a decision beyond a reasonable doubt." The court exercised jurisdiction under Rule 35(a) and resentenced Clark to ten years in prison.

## II. ANALYSIS

On appeal, Clark argues that the district court was not authorized under Rule 35(a) to change his sentence. He also argues that his Fifth and Sixth Amendment rights were violated when the district court found, by a preponderance of the evidence, facts that subjected him to a mandatory minimum sentence of ten years. Finally, he argues that the district court's calculation of the quantity of drugs involved in his offense was clearly erroneous.

### A.  The district court's correction of Clark's sentence

Clark argues that the district court was not authorized to correct his sentence under Rule 35(a) to reflect the statutory mandatory minimum because, in Clark's opinion, the Rule does not allow a correction in a case where the government waived the application of the mandatory minimum at the sentencing hearing. This

presents a question of law that we review *de novo*. *See United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007) ("Whether the district court followed the proper procedures after *United States v. Booker* in imposing [a] sentence is a question of law we review *de novo*." (internal citation omitted)).

Rule 35(a) allows for "Correcting Clear Error": "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). The district court's action in this case—correcting the sentence the day after it was imposed—falls within the parameters of Rule 35(a). The error was not arithmetical or technical, but instead was substantive—the court mistakenly failed to apply the mandatory minimum sentence for Clark's conviction, as prescribed by Congress. *See* 21 U.S.C. § 841(b)(1)(A)(ii).

The scope of Rule 35(a) is narrow; the advisory committee notes indicate that the Rule should "extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court . . . ." Fed. R. Crim. P. 35 advisory committee's note to 1991 Amendments. The Rule does not give the district court a second chance to exercise its "discretion with regard to the application of the sentencing guidelines," nor does it allow for changes to a sentence based on the court's change of mind. *Id.* Additionally, the Rule should not be used in a way that relaxes "any requirement that the parties state all objections to a sentence at or before the sentencing hearing." *Id.*

Clark clings to this last limitation on Rule 35(a), and claims that the government lost its opportunity to argue for application of the mandatory minimum sentence by not raising the issue at sentencing, and more significantly, by affirmatively stating that no mandatory minimum sentence applied to Clark's conviction. With this argument, Clark suggests that whenever the government (or the defendant, for that matter) makes a mistake at a sentencing hearing, the court is bound by that mistake and may not correct a sentencing error that stems from it. Clark's position might make sense if applied to discretionary considerations and enhancements or reductions under the advisory guidelines—parties must state all of their objections to the multiple facets of a sentence at the sentencing hearing. *See United States v. Porretta*, 116 F.3d 296, 300 (7th Cir. 1997). Arguing after-the-fact, via a Rule 35(a) motion to correct a sentencing error, that the district court improperly applied a sentencing enhancement or reduction "flies in the face of the advisory committee's admonition that it 'did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing.'" *Id.* (quoting Fed. R. Crim. P. 35 advisory committee's note to 1991 Amendments).

But the situation here is different because the mistake was more fundamental—the resulting sentence violated a legislative mandate requiring that persons convicted of Clark's particular crime, with the amount of drugs involved, be imprisoned for a minimum term of ten years. *See* 21 U.S.C. § 841(b)(1)(A)(ii). The district court repeatedly asked the AUSA whether there was a mandatory

minimum it should factor into Clark's sentence, but the AUSA erroneously stated that there was not. To bind the court to the government's error would not only result in a windfall to this particular defendant—who is not unlike other defendants who were correctly sentenced to the mandatory minimum of ten years' imprisonment—but would also directly contravene congressional intent. Unlike the sentencing guidelines, which are advisory, *see United States v. Booker*, 543 U.S. 220, 264-65 (2005), statutory mandatory minimums are just as they sound—mandatory, *see United States v. Cannon*, 429 F.3d 1158, 1160 (7th Cir. 2005). To allow a party's blunder at sentencing to defuse the mandate of Congress—especially where the Federal Rules of Criminal Procedure provide a means for district courts to correct such blunders within seven days of the sentence—would convert individual lawyers into legislators each time a court mistakenly follows an illegitimate recommendation. The statements of the Supreme Court in *Bozza v. United States*, are equally pertinent here: "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. . . . The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." 330 U.S. 160, 166-167 (1947) (internal citations omitted).

The mistake in this case that Clark desired to let lie would have been reversed on appeal—district courts must abide by statutory sentencing ranges. *See United States v. Roberson*, 474 F.3d 432, 434 (7th Cir. 2007) ("The Supreme Court's decision in *United States v. Booker*, which

made the sentencing guidelines advisory, did not authorize district judges to ignore statutory sentencing ranges. . . . *Booker* confers no authority on judges to disregard statutes." (internal citation omitted)). And the district court was well aware of its authority and the repercussions of such a mistake: "based on Seventh Circuit precedent, I have no choice but to impose the ten-year mandatory minimum, and I think the failure to do so and the propriety of doing so is so clear that it would almost certainly result in a remand, which, I take it, is what I need to find in order to have jurisdiction under Rule 35 to correct the sentence."

Clark continues, however, that the AUSA's denouncement during the sentencing hearing of a mandatory minimum foreclosed the possibility of a sentence correction under Rule 35(a) by way of the waiver doctrine. His argument is somewhat tenable in light of our language in *United States v. Byerly*, 46 F.3d 694, 699 (7th Cir. 1995). In *Byerly*, the government attorney told the district court that it was within the court's discretion to impose a mandatory sentence. *Id.* at 696. The government was wrong, but the government did not bring the error to the court's attention until over two years later, after the defendant had (unsuccessfully) appealed his sentence, and after we issued our mandate affirming his conviction. *Id.* at 697. The government filed a motion under the old version of Rule 35(a), which allowed the district court to "correct an illegal sentence at any time and [ ] correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence," that is, within 120 days of an affirmance of the judgment. *Id.*

(quoting old Rule 35(a)). The government acted within the proper time frame under the old rule, but we decided that the district court could not correct the illegal sentence, notwithstanding the language of old Rule 35(a), because of the government's waiver. *Id.* at 699-700.

> An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course. [The] AUSA [ ] bound his principal and client, the United States, to the position that the application of the Guidelines and a mandatory minimum sentence to Byerley's conviction was discretionary with the district court. The government cannot now use old Rule 35(a) to overcome the errors of its agent.

*Id.* at 700 (internal citation and quotation marks omitted).

Old Rule 35(a) was more expansive than the current version of the rule—allowing for the correction of an illegal sentence "at any time" up to 120 days after an affirmance or dismissal of the appeal. *Id.* at 697. Thus, the Rule allowed for corrections of sentences long after their imposition, and in *Byerly*, the implications of such a broad grant of corrective power were clear. The Rule contemplated allowing a party, the government, to sit back throughout the direct appeal process with the possibility of a Rule 35(a) correction in reserve. It made sense for us, in terms of judicial economy and the finality expectations of convicted defendants, to impose a limitation on old Rule 35(a) in a case where the government reversed the

position it advocated to the district court, years after sentencing.

But that functional limitation is no longer necessary because Rule 35(a)'s revision includes a limitation that protects the dual concerns of judicial economy and finality: the district court must correct the sentence within seven days, *see* Fed. R. Crim. P. 35(a), and it may not correct the sentence after that time period, *see United States v. Baldwin*, 414 F.3d 791, 797 (7th Cir. 2005) ("The Supreme Court has held that these rules [including Rule 35(a)] operate to deprive the court of authority to act after the time period specified in the rule has elapsed." (citing *Carlisle v. United States*, 517 U.S. 416, 428 (1996)) (*overruled in part on other grounds by United States v. Parker,* 508 F.3d 434, 441 (7th Cir. 2007)). Unfortunately for Clark, the doctrine of waiver is no longer necessary, nor applicable to the new Rule. Where a party makes a mistake at a sentencing hearing, which in turn leads to the imposition of a sentence that is clearly wrong—for example, a mistake in contravention of clear congressional intent or mandate—the district court may correct the sentence so long as the correction complies with Rule 35(a) and occurs within seven days. We emphasize that such mistakes might be made by either party—if a defendant did not realize at sentencing that he was *not* subject to a mandatory minimum sentence, but the court erroneously applied one, the defendant could make a motion for a corrected sentence within the seven-day time period. We also reiterate that the scope of Rule 35(a) is narrow, and our reasoning should not be read to allow parties to raise, after sentencing, arguments for or against enhancements or reductions under the guidelines that should have been raised

at the sentencing hearing. *See Poretta*, 116 F.3d at 300. To the extent that this decision is inconsistent with our prior ruling in *Byerly*, we overrule that portion of *Byerly*. 46 F.3d at 700.[1]

## B.   *The imposition of a mandatory minimum sentence based on judge-found facts*

Clark contends that the quantity of drugs involved in his offenses should have been determined beyond a reasonable doubt, by a jury. We review this *Apprendi* issue *de novo*. *United States v. Seymour*, 519 F.3d 700, 709 (7th Cir. 2008); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Clark was convicted under 21 U.S.C. § 841, which prescribes in its subsections escalating penalties for defendants depending on the quantity of a controlled substance the defendant knowingly or intentionally manufactured, distributed, dispensed, or possessed with intent to manufacture, distribute, or dispense. 21 U.S.C. § 841(a)(1), (b); *see also United States v. Hernandez*, 330 F.3d 964, 979-80 (7th Cir. 2003). Because the amount of cocaine involved in Clark's conviction was over five kilograms, he was subject to a mandatory ten-year term of imprisonment. 21 U.S.C. § 841(b)(1)(A)(ii). This mandatory term was below the twenty-year maximum term

---

[1] This opinion has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e). No judge favored a rehearing en banc. Judge Flaum did not participate in the consideration of this case.

Clark could have received for a § 841 conviction absent any drug-quantity determination. *See id.* § 841(b)(1)(C).

Clark acknowledges that we have held on multiple occasions that judges may find facts, by a preponderance of the evidence, that subject a defendant to a statutory mandatory minimum. *See United States v. Price*, 516 F.3d 597, 605 (7th Cir. 2008); *United States v. Jones*, 418 F.3d 726, 732 (7th Cir. 2005); *United States v. Knight*, 342 F.3d 697, 714 (7th Cir. 2003); *Hernandez*, 330 F.3d at 980-82; *see also United States v. Collins*, 510 F.3d 697, 701 (7th Cir. 2007). We see no reason to depart from our precedent and continue to hold that "*Apprendi* has no application where a drug dealer is given a sentence at or below the maximum provided in § 841(b)(1)(C)." *Hernandez*, 330 F.3d at 908; *see also United States v. Abdulahi*, 523 F.3d 757, 760 (7th Cir. 2008) ("*Apprendi* has no application to cases like this one where the sentence is below the statutory maximum.").

One of Clark's arguments on this topic warrants brief consideration. Clark encourages us to rethink our precedent because the Second and Ninth Circuits have adopted contrary approaches to drug-quantity determinations under § 841. In *United States v. Gonzalez*, 420 F.3d 111, 133-34 (2nd Cir. 2005), the Second Circuit concluded that the "drug quantities specified in 21 U.S.C. § 841 are elements that must be pleaded and proved to a jury or admitted by a defendant to support any conviction on an aggravated drug offense, not simply those resulting in sentences that exceed the maximum otherwise applicable for an identical unquantified drug crime." And in *United States v.*

*Velasco-Heredia*, 319 F.3d 1080, 1085-87 (9th Cir. 2003), the Ninth Circuit decided that facts subjecting defendants to mandatory minimums under § 841 must be proven to a fact-finder beyond a reasonable doubt.

"While we carefully and respectfully consider the opinions of our sister circuits, we are not bound by them." *United States v. Williams*, 184 F.3d 666, 671 (7th Cir. 1999). "Our duty is to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits." *Atchison, Topeka & Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 443 (7th Cir. 1994). We have carefully analyzed whether drug quantity constitutes an element of an § 841 offense that must be proven to a jury beyond a reasonable doubt, and have decided time after time that neither the statute, nor *Apprendi* and its progeny, dictates such a result. *See, e.g.*, *United States v. Martinez*, 301 F.3d 860, 863-66 (7th Cir. 2002); *see also Abdulahi*, 523 F.3d at 760-61; *Hernandez*, 330 F.3d at 980-81.

C.  *The district court's drug-quantity findings*

We review the district court's determination of drug quantity for clear error. *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). "This is a highly deferential standard of review and we refuse to 'second-guess the sentencing judge.' " *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005) (quoting *United States v. Cleggett*, 179 F.3d 1051, 1059 (7th Cir. 1999)). The government had the burden of proving drug quantity to the court by a preponderance of the evidence, *United States v. McGowan*, 478 F.3d 800, 802 (7th

Cir. 2007); *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004), but the evidence supporting the drug-quantity determination need not have been limited to evidence admissible at trial. *White*, 360 F.3d at 720; *United States v. Galbraith*, 200 F.3d 1006, 1011-12 (7th Cir. 2000).

Clark argues that the district court should not have relied on the testimony of Juan Corral because Corral was an admitted perjurer and drug user who had lied previously to protect his own interests. This argument fails because the district court specifically found Corral to be a truthful witness, despite his inability to remember specific details about his deals with Clark. A district court's determination of witness credibility is "entitled to great deference and 'can virtually never be clear error.'" *White*, 360 F.3d 718, 720 (7th Cir. 2004) (quoting *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003)). Further, a sentencing court may credit testimony that is "'totally uncorroborated and comes from an admitted liar, convicted felon, or large scale drug-dealing, paid government informant.'" *Id.* (quoting *Blalock*, 321 F.3d at 690); *see also Galbraith*, 200 F.3d at 1012; *United States v. Rodgers*, 245 F.3d 961, 968 (7th Cir. 2001) ("[T]he district judge was free to credit Dexter. That Dexter was a convicted felon who stood to gain from his testimony against Rodgers is by no means a remarkable circumstance."). Furthermore, it is clear from the record that Corral's testimony about his sales to Clark never wavered. He maintained throughout the 17-kilogram estimate, and consistently explained that Clark usually purchased five kilograms, sometimes purchased three, and at least once purchased eight. Unlike the situation in *United States v. Beler*, 20 F.3d 1428, 1433-34 (7th Cir.

1994), where the witness wavered in his testimony about drug quantity, Corral's testimony remained constant.

To compute his estimate of cocaine sales, Corral multiplied the minimum number of kilograms he sold to Clark during a transaction (three kilograms) by the number of months he dealt with Clark (five months)—15 kilograms. Because he remembered selling Clark more than three kilograms "at times," he added an additional two kilograms to his total calculation of 17 kilograms, which Corral stated was conservative. This method of computation, assuming credibility and reliability of the witness, is permissible. A district court may "calculate drug quantity by taking a witness's estimate of the amount of drugs she usually purchased and multiplying it by the number of times she bought drugs from the defendant." *White*, 360 F.3d at 720; *see also United States v. Durham*, 211 F.3d 437, 444 (7th Cir. 2000).

Granted, Corral could not recall the specific details of his deals with Clark, the exact number of occasions he sold cocaine to Clark, or the amount of cocaine involved in each sale. Clark argues that because Corral could not remember details, his testimony lacked the required "indicia of reliability" that would allow the district court to rely on his statements. *See Beler*, 20 F.3d at 1433. Indeed, the district court agreed that Corral's recollections were vague and not specific enough in themselves to support a drug-quantity finding of over 15 kilograms. However, the district court decided that the summaries of the wiretapped phone conversations—contained in the original complaint affidavit that was submitted to a

magistrate judge—corroborated Corral's testimony. The two phone calls from May and June corroborated Corral's testimony that Corral dealt with Clark about once per month and that Corral sold Clark kilogram quantities of cocaine.

The transcripts of those conversations were not admitted into evidence, nor were the actual recordings—so Clark objects to the district court's reliance on the complaint affidavit that summarized the conversations. The district court explained that because the standard was only a preponderance of the evidence, and the rules of evidence did not apply, it could rely on the government's assertion in an official court document that the "complaint [was] based on surveillance."

Section 6A1.3(a) of the Guidelines allows sentencing courts to "consider information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." The complaint affidavit was a document presented to a magistrate judge and attested to by the drug trafficking agent. The district court was entitled to credit the complaint as an accurate summary of the government's evidence about Clark. There was nothing suggesting that the complaint was unreliable or that it contained inconsistencies, which was the case in *Beler,* in which two sworn affidavits contradicted one another. 20 F.3d at 1433-36; *see also Hankton*, 432 F.3d at 790 (stating that the defendant did not show how agent's testimony about wiretapped conversations was unreliable, other than the fact that testimony was inadmissible hearsay).

The summaries of the wiretapped conversations supported Corral's testimony, which never wavered with respect to how much cocaine Corral estimated he sold to Clark. We agree with the district court that the complaint affidavit contained the requisite indicia of reliability for the district court to factor its contents into the drug-quantity determination. Between Corral's testimony and the corroborating summaries of the wiretapped conversation, the district court did not clearly err in finding by a preponderance of the evidence that Clark's § 841 offense involved more than 15 kilograms of cocaine.

### III. CONCLUSION

The amended judgment of the district court correcting Clark's sentence is AFFIRMED.