In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 07-4067 & 07-4085

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NEASHON WASHINGTON and ADREIN BENNETT,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 06-10033—**Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 3, 2008—DECIDED MARCH 13, 2009

Before EASTERBROOK, *Chief Judge*, and MANION and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Neashon Washington and Adrein Bennett were two members of a drug distribution gang that called itself the "Bigelow boys." The Boys operated in the general area of Peoria, Illinois, using a house at 1811 Bigelow Street. The police began focusing on Washington and Bennett in mid-2005, with the help of a confi-

dential informant. Undercover work and controlled sales followed. Eventually, Washington, Bennett, and three other men were charged with conspiracy to distribute crack cocaine and a number of substantive distribution offenses, in violation of 21 U.S.C. §§ 841(a)(1) and 846. After a jury found Bennett and Washington guilty of all charges against them, the district court sentenced Bennett to a term of 240 months' imprisonment, with 10 years of supervised release on the conspiracy count and 6 years on all other counts, and it sentenced Washington to a term of 140 months' imprisonment, with varying terms of supervised release for different counts.

Both have appealed. Bennett argues that the district court made two errors in sentencing him: first, he asserts that it was inconsistent with *Apprendi v. New Jersey,* 530 U.S. 466 (2000), for the judge to use 21 U.S.C. § 841(b)(1)(A) as the basis for a statutory minimum sentence of 20 years, despite the jury's failure to find that he had dealt in the necessary quantity of drugs to trigger subpart (A)'s *maximum* sentence; and second, he argues that the judge should not have applied the two-level enhancement for use of a gun in relation to a drug trafficking crime, under U.S. Sentencing Guideline § 2D1.1(b)(1), in computing his offense level. Washington argues only that the district court erred in entering judgment and sentencing him for distribution of cocaine base (crack), when the jury found him guilty only of distributing the powder form of cocaine. The district court has since corrected the judgment so that it now reads "distribution of cocaine." As the error did not otherwise affect Washington's sentence, the district court's action suffices to

moot Washington's appeal. We therefore confine our remarks here to Bennett's case.

## I

Because Bennett's arguments focus exclusively on his sentence, we can dispense with a detailed account of the operation of the drug conspiracy. The jury was presented with evidence from a cooperating member of the conspiracy, who told them about what was sold (usually crack), how much was sold, what prices were charged, and how the drugs were weighed, packaged, and delivered. When the time came to instruct the jury, one instruction went as follows:

> If you find the defendant, Adrein Bennett, guilty of conspiracy as charged in Count 1 of the Indictment, next you must find beyond a reasonable doubt the quantity of drugs involved. Indicate your findings as to the quantity of drugs below and have each juror sign this form.

> We, the jury, find that the amount of controlled substances involved in the conspiracy and reasonably foreseeable to Adrein Bennett was:

> _____ less than 5 grams

> _____5 grams or more, but less than 50 grams

> _____50 grams or more

With respect to Count 2 (which charged Bennett and Washington with distribution of crack), the jury was asked to decide only whether Bennett was guilty of

distributing "cocaine." For Counts 3 through 17, the jury was asked to make a finding of guilty or not guilty, and then to indicate whether the drug distributed was "cocaine base, but not cocaine base (crack)" or "cocaine base (crack)." It was not asked to find quantity for Counts 2 through 17.

At one point during its deliberations, the jury sent a note indicating that it was having trouble agreeing on the quantity of cocaine involved in any of the counts. After a discussion, the prosecutor and defense counsel agreed that the court should just await the jury's verdict and decide then what to do if anything was missing. The jury eventually returned its verdict and found Bennett guilty of the conspiracy charged in Count 1, but it left the form addressing drug quantity blank. It also agreed that the substance involved in Counts 3 through 17 was crack cocaine, but again it did not specify any quantity.[1]

---

[1] It is possible that the jury's failure to agree on a quantity was in part attributable to the way this instruction, and the corresponding verdict form, were worded. If, for example, six jurors thought that 48 grams of crack was involved and six thought the quantity was 55 grams, then none of the boxes on the form provided would have applied. It would be preferable, it seems to us, to give the jury an open-ended form, saying something like "we find unanimously that the defendant distributed at least ___ grams of crack and ___ grams of powder cocaine." The blanks would be filled in with the minimum quantities on which the jurors all agreed. This would give the trial court the information it needed to apply the statutory thresholds,
(continued...)

The court accepted the verdict and ordered a presentence report ("PSR"). The probation officer concluded that Bennett's relevant conduct involved at least 150 grams but less than 500 grams of crack cocaine, based on the evidence received at trial. The PSR also recommended a four-level enhancement for Bennett's leadership role in the offense and a two-level enhancement for having a firearm present at the Bigelow house. This led to a base offense level of 38 under the Sentencing Guidelines and an advisory sentencing range of 262 to 327 months. The PSR took the position that, under 21 U.S.C. § 841(b)(1)(A), the statutory minimum sentence applicable to Bennett was 240 months, because Bennett had a prior felony drug conviction.

In its sentencing memorandum, the government acknowledged that the jury had not made a finding of drug quantity. It argued, however, that the court had the authority to find quantity as long as the court refrained from imposing a sentence longer than the 30-year maximum authorized by § 841(b)(1)(C), and that the evidence supported a finding that the conspirators had dealt in more than 50 grams of crack. It relied in part on *Harris v. United States,* 536 U.S. 545 (2002), which holds that the *Apprendi* line of cases does not apply to statutory minima. Bennett objected to the court's authority to make a finding relating to the statutory minimum, given

---

[1] (...continued)

such as the 5 gram or 50 gram level in crack cases, or the 500 gram and 5 kilogram level in powder cocaine cases.

the jury's failure to make any finding on quantity. He also objected to the leadership and gun enhancements. The court found that there was "a fairly rich body of evidence" showing that extensive drug activity was going on at the Bigelow house and that it was appropriate to attribute this activity to Bennett.

Disagreeing with the probation officer, the court found that Bennett was responsible only for 50 to 150 grams of crack. It also found that both the leadership and the gun enhancements were proper, leading to a final total offense level of 36 (rather than the 38 that the PSR had recommended). It also concluded that the mandatory minimum applicable to Bennett was the 20-year term specified in 21 U.S.C. § 841(b)(1)(A), which applies when the drug quantity is 50 grams or more, notwithstanding the jury's failure to make any quantity finding. Bennett objected, arguing that any finding regarding the mandatory minimum had to be made by the jury. The district court decided, however, that as long as the *maximum* term was not extended, it was entitled to make findings relating to the minimum. Although Bennett's advisory guideline range would have been 210 to 262 months without taking the mandatory minimum into account, the court's decision to apply that minimum made the range 240 to 262 months for Count 1 (and 210 to 262 months for the remaining counts). The court then sentenced Bennett to 240 months on all counts, with his sentences to run concurrently.

## II

### A

Bennett's primary argument for setting aside his sentence is that the district court acted inconsistently with *Apprendi* when it found the facts that supported his mandatory minimum sentence. *Apprendi* held that a jury must find beyond a reasonable doubt "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530 U.S. at 490. Although *Apprendi* arose in the context of New Jersey's sentencing regime, it is by now well established that the rule it announced applies to federal sentencing as well. See *United States v. Booker*, 543 U.S. 220, 233, 245 (2005) (*Apprendi* rule applies to federal sentencing, but it does not apply to an advisory sentencing guideline system, as opposed to statutory maxima). This does not, however, transform drug type and quantity into "elements" of the offense. Instead, as we have held repeatedly, drug type and quantity are sentencing factors that must be found by the jury, insofar as they establish the maximum possible sentence. See, *e.g., United States v. Kelly*, 519 F.3d 355, 363 (7th Cir. 2008); *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002); *United States v. Bjorkman*, 270 F.3d 482, 491-92 (7th Cir. 2001).

Although some thought that the *Apprendi* rule logically should apply to minimum sentences established by statute, the Supreme Court has not been persuaded to follow that path. Instead, in *Harris v. United States, supra,* the Court concluded that there is no requirement for the

jury to find beyond a reasonable doubt the facts that trigger a statutory minimum sentence. 536 U.S. at 557. Although that would seem to preclude Bennett's argument, insofar as it is based on the *Apprendi* line of cases, the Second Circuit did not see matters that way in its decision in *United States v. Gonzalez,* 420 F.3d 111 (2d Cir. 2005). This court, however, expressly refused to follow *Gonzalez* and a similar decision from the Ninth Circuit, *United States v. Velasco-Heredia,* 319 F.3d 1080 (9th Cir. 2003), in *United States v. Clark,* 538 F.3d 803, 812 (7th Cir. 2008). Although we could dismiss Bennett's argument summarily, in light of *Clark*, respect for the views of our sister circuits and Bennett's reliance on those cases persuade us to take another look at these issues.

In *Gonzalez,* the Second Circuit held that a criminal defendant cannot be sentenced unless "a jury found or Gonzalez himself admitted the specified drug quantity element." 420 F.3d at 125. The court reasoned that 21 U.S.C. § 841(a)(1), which makes it unlawful to traffic in drugs, and 21 U.S.C. § 841(b)(1), which sets forth the sentencing ranges for drug offenses, operate independently of one another, and that after *Apprendi,* the court must treat both as establishing elements of the offense. (This court, as *Kelly* illustrates, does not interpret *Apprendi* that way.) The *Gonzalez* court then examined § 841(b)(1) more carefully. As it noted, for a person with a prior drug felony, like Gonzalez (or like Bennett), who traffics in an unquantified amount of crack, the relevant sentencing provision is § 841(b)(1)(C); that subsection does not specify any minimum sentence, but it prescribes a maximum sentence of 30 years. If that same

recidivist trafficked in five grams or more of cocaine base, § 841(b)(1)(B) imposes a minimum sentence of 10 years and a maximum of life in prison. Finally, if the quantity of cocaine base is 50 grams or more and the person has a prior drug conviction, § 841(b)(1)(A) establishes a statutory minimum sentence of 20 years and a maximum of life. *Gonzalez* held that "[n]othing in the structure of the statute suggests that these corresponding minimums and maximums, or any of the others prescribed in the statute, can be delinked to permit mixing and matching across subsections to create hybrid sentencing ranges not specified by Congress." 420 F.3d at 121 (citing *Velasco-Heredia,* 319 F.3d at 1086).

As we noted earlier, this court expressed disagreement with the holding of *Gonzalez* in *United States v. Clark.* We did not specify whether our disagreement flowed from *Gonzalez*'s characterization of the sentencing rules as "elements" of a crime rather than "sentencing factors," or if we understood the Second Circuit's comments about the structure of the statute to be an alternative basis for its ruling independent of its interpretation of *Apprendi*'s requirements. No one that we can find, including Bennett's counsel in the district court, Bennett's counsel before this court, and the district court, has considered the question whether, as a straightforward matter of statutory interpretation, it is permissible to apply a statutory maximum sentence from one subsection of § 841(b)(1), and then to select the statutory minimum sentence from a different subsection of § 841(b)(1). Instead, along the same lines the Second Circuit chose, counsel has argued only that it would be inconsistent with

*Apprendi* to use the 30-year statutory maximum for Bennett that is found in § 841(b)(1)(C) (which applies to him because the jury did not specify any quantity of drugs), while at the same time using the 20-year statutory minimum found in § 841(b)(1)(A) (based on the court's finding that the offense involved more than 50 grams of cocaine base).

We are not inclined to revisit our decision in *Clark*, which adhered to our position that § 841(b)(1) identifies sentencing factors, not elements of the offense. We have no power to change the rule in *Harris*, under which *Apprendi* does not apply to facts establishing a statutory minimum. Because these were the only arguments presented on Bennett's behalf, we consider the pure statutory question forfeited in this particular case. We add, however, that we see nothing in *Harris* that cabins Congress's authority to link together a particular statutory minimum with a statutory maximum determined by a jury. Thus, if the statute said something like "the sentencing court must apply both the statutory maximum and the statutory minimum that corresponds to the drug quantity found by the jury," then the mix-and-match approach that the district court took here would be out of the question. The open question is thus a pure one of statutory interpretation: what, in the final analysis, has Congress done in § 841(b)(1)? Has it enacted, in substance, the hypothetical statute we just described, or is the government correct in arguing that the minimum sentences prescribed by the statute may be based on findings by the judge, as long as the final sentence respects the maximum authorized by the jury? To our

knowledge, no court has squarely confronted that issue, and, because it has not been properly raised in this case, we decide this case on the basis that the parties have chosen. There is no *Apprendi* problem with Bennett's sentence, and we thus move on to his other argument.

B

As we noted earlier, when the district court computed Bennett's offense level under the Sentencing Guidelines, it added two levels under § 2D1.1(b)(1), which requires that enhancement for a drug offender "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the offense. Application Note 3 to the guideline goes on to say that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt (n.3). On the other hand, the note also says that "the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." *Id.*

Bennett argues that there was insufficient evidence to support a conclusion that the drugs were sold or prepared for sale at the Bigelow house. Without such evidence, he continues, there is no way to link the guns found in the house to his drug distribution activity. Although the government might have argued that the importance of this enhancement drops out of the case if we affirm the statutory minimum sentence (as we have done), it did not. Erring on the side of caution, therefore, we consider Bennett's argument on the merits. In

opposing his position, the government points to the following evidence:

- Cooperating witness Douglas Sherman's testimony that a house on Bigelow Street was a "gathering place," along with the fact that there were six men in the Bigelow house when the police searched it

- Sherman's testimony that he purchased cocaine at a house on Bigelow Street

- Jennifer Delaney's testimony that she purchased cocaine at a house on Bigelow Street

- The discovery by the police of two semi-automatic handguns at 1811 Bigelow Street

- The discovery by the police of a plate with Bennett's fingerprint and .5 grams of cocaine on it, also at 1811 Bigelow Street

- Sherman's testimony that Bennett used a plate of that type to prepare cocaine for distribution and his opinion that the plate was not consistent with personal use

- Sherman's testimony that Bennett did not use cocaine

Bennett points to a number of cases in which the quantity of drugs discovered in proximity to the guns was substantially greater than the .5 grams the police found in his case. *E.g., United States v. Turner*, 93 F.3d 276, 289 (7th Cir. 1996) (handgun found in same room as 29 grams of methamphetamine, 5 pounds of a methamphetamine precursor, and other paraphernalia); *United*

*States v. Ewing*, 979 F.2d 1234, 1238 (7th Cir. 1992) (unloaded gun found in lockbox with 20 grams of cocaine, among other things). But the government did not have to prove the association solely by looking to the amount of drugs in close proximity to the gun. The question is whether it was clearly improbable that these guns were connected with Bennett's drug-dealing activities. The district court thought not, and we cannot say that it clearly erred in coming to that conclusion.

### III

Finally, it appears that the same error was made with respect to Count 2 in Bennett's case as was made in Washington's—that is, the judgment read "distribution of cocaine base (crack)" instead of "distribution of cocaine." Bennett has not raised this issue on appeal, but this error strikes us as plain and in need of correction. We therefore AFFIRM the sentence, but we REMAND for the limited purpose of correcting the judgment on Count 2 to read "distribution of cocaine."